## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA
## (PHILADELPHIA)

| | | |
|---|---|---|
| IN RE: | ) | |
| **MICHAEL BRENNAN, AND** | ) | **CASE NO.: 24-12904-amc** |
| **RAFFAEL A TUCK-BRENNEN,** | ) | **CHAPTER 13** |
| | ) | **JUDGE ASHELY M. CHAN** |
| **DEBTORS.** | ) | |
| | ) | |
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS** | ) | |
| **INDENTURE TRUSTEE, FOR THE ATLX 2024-RPL1** | ) | |
| **TRUST MORTGAGE-BACKED NOTES, SERIES** | ) | |
| **2024-RPL1 AS SERVICED BY NEWREZ LLC D/B/A** | ) | |
| **SHELLPOINT MORTGAGE SERVICING,** | ) | |
| | ) | |
| **CREDITOR.** | ) | |
| | ) | |
| **MICHAEL BRENNAN AND RAFFAEL A TUCK-** | ) | |
| **BRENNAN, DEBTORS, AND** | ) | |
| **SCOTT F. WATERMAN, TRUSTEE,** | ) | |
| | ) | |

## MOTION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE, FOR THE ATLX 2024-RPL1 TRUST MORTGAGE-BACKED NOTES, SERIES 2024-RPL1 AS SERVICED BY NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING FOR RELIEF FROM AUTOMATIC STAY UNDER § 362

1. Movant is Wilmington Savings Fund Society, FSB, as indenture trustee, for the ATLX 2024-RPL1 Trust Mortgage-Backed Notes, Series 2024-RPL1 as serviced by NewRez LLC d/b/a Shellpoint Mortgage Servicing.

2. Debtors are the owners of the property described as 7055 Paschall Avenue, Philadelphia, PA 19142 (hereinafter the "Property").

3. Movant is the holder of a Mortgage, with an original principal amount of $40,800.00 on the mortgaged premises that was executed on June 11, 1998. Said mortgage was recorded on July 16, 1998 as Doc. Id number 000472. Documentation provided is in support of right to seek a lift of stay and foreclose if necessary.

4.  Scott F. Waterman is the Trustee appointed by the Court.

5.  As of February 13, 2025, Debtor has failed to make the monthly payments for the months of December 1, 2024 through February 1, 2025 for $904.95 ($301.65 x 3) with a suspense balance of ($6.35) for a total arrears of $898.60.

6.  As of February 13, 2025 the principal balance owed is $48,108.71.

7.  Debtors Third Amended Plan accounts for the Trustee to pay the arrears and Debtor to pay Movant the regular monthly payments.

8.  In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will also incur $1,350.00 in legal fees and $199.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

9.  Movant is entitled to relief from stay for cause.

10. Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. Movant may contact Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

11. This motion and the averments contained therein do not constitute a waiver by Movant of its right to seek reimbursement of any amounts not included in this motion, including fees and costs, due under the terms of the mortgage and applicable law.

12. NewRez LLC dba Shellpoint Mortgage Servicing, services the underlying mortgage loan and note for the property referenced in this motion for Movant. In the event the

automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note.  The Note is endorsed in blank.  Movant is the beneficiary or the assignee of the Deed of Trust.

WHEREFORE, Movant prays that an Order be entered modifying the Stay and permitting Movant to proceed with its mortgage foreclosure on the mortgaged premises, and to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the mortgage premises. Further, Movant prays that an Order be entered awarding Movant the costs of this suit, reasonable attorney's fees in accordance with the mortgage document and current law together with interest.

Dated: <u>March 12, 2025</u>                    Respectfully Submitted,

<u>/s/ Joshua I. Goldman</u>
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Movant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the parties on the attached Service List by electronic notice and/or by First Class U.S. Mail on this 12th day of March 2025.

### *VIA U.S. MAIL*

*DEBTORS*
MICHAEL BRENNAN
RAFFAEL A TUCK-BRENNAN
7055 PASCHALL AVENUE
PHILADELPHIA, PA 19142

### *VIA ELECTRONIC NOTICE*

*ATTORNEYS FOR DEBTOR*
BRAD J. SADEK
SADEK LAW OFFICES, LLC
1500 JFK BOULEVARD
STE 220
PHILADELPHIA,   PA   19102
BRAD@SADEKLAW.COM

*TRUSTEE*
SCOTT F. WATERMAN [CHAPTER 13]
CHAPTER 13 TRUSTEE
2901 ST. LAWRENCE AVE., SUITE 100
READING, PA 19606
ECFMAIL@READINGCH13.COM

*U.S. TRUSTEE*
UNITED STATES TRUSTEE
OFFICE OF UNITED STATES TRUSTEE
ROBERT N.C. NIX FEDERAL BUILDING
900 MARKET STREET, SUITE 320
PHILADELPHIA, PA 19107
USTPREGION03.PH.ECF@USDOJ.GOV

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
Josh.goldman@padgettlawgroup.com
*Counsel for Movant*

# NOTE

June 11, 1998                          Philadelphia
[Date]                                    [City]
                    7055 Paschall Avenue, Philadelphia, PA 19142                    Pennsylvania
                                                                                      [State]

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 40,800.00                    (this amount is called
"principal"), plus interest, to the order of the Lender. The Lender is **Central Money Mortgage Co. (IMC), Inc.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly
rate of     **10.9900** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the     **16th**     day of each month beginning on     **July 16, 1998**
I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
**June 16, 2028**                    , I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "maturity date."

I will make my monthly payments at **656 Swedesford Road, Suite 102, Wayne, PA 19087**

                                                            or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **388.24**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a
"prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use
all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will
be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those
changes.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument                    Form 3200 12/83

ITEM 1848L1 (9611)                          (Page 1 of 3 pages)                    GREATLAND ■
                                                                    To Order Call: 1-800-530-9393 □Fax 616-791-1131

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          **fifteen**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          **5.0000**%  of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Form 3200 12/83

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

_____ (Seal)
Michael Brennan                    -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
CENTRAL MONEY MORTGAGE CO., INC.
BY: _____ (INC)
     BRIAN D. HOLMAN, PRESIDENT

M 363 531

██████████████

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **June 11, 1998**
The mortgagor is **Michael Brennan** and Raffael A. Brennan

("Borrower"). This Security Instrument is given to
**Central Money Mortgage Co. (IMC), Inc.**
which is organized and existing under the laws of **the State of Pennsylvania**
**656 Swedesford Road, Suite 102, Wayne, PA 19087**
, and whose address is

("Lender"). Borrower owes Lender the principal sum of
**Forty Thousand Eight Hundred and no/100**
Dollars (U.S. $ **40,800.00**                ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**June 16, 2028**                . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced
by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in **Philadelphia**

**See Exhibit A attached hereto and made a part hereof.**

County, Pennsylvania:

000472

COMMISSIONER OF RECORDS
Jean T. Dickey
THIS DOCUMENT RECORDED
98 6 PM 12:43

which has the address of          **7055 Paschall Avenue**                              **Philadelphia**
                                   [Street]                                             [City]

Pennsylvania          **19142**          ("Property Address");
                      [Zip Code]

**PENNSYLVANIA** -- Single Family -- **Fannie Mac/Freddie Mac UNIFORM INSTRUMENT**          Form 3039 9/90
ITEM 1850L1 (9511)                    (Page 1 of 6 pages)          GREATLAND
                                                                  To Order Call: 1-800-530-8283 ☐ Fax 616-791-1131

18

Case 24-12904-amc   Doc 39   Filed 03/12/25   Entered 03/12/25 11:28:08   Desc Main
06-11-98   THU 11:42 FAX 1 610 688 747 Document   Page 9 of 30

363 532

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and

for the periods that Lender requires The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

Case 24-12904-amc   Doc 39   Filed 03/12/25   Entered 03/12/25 11:28:08   Desc Main
08·11·98  THU 11:44 FAX 1 610 688 7890 CENTRAL Document   Page 11 of 30                        ☒009

H :363 534

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

Form 3039 9/90

GREATLAND ▪
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19.  Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20.  Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.  Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.

**22.  Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23.  Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**24.  Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25.  Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26.  Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**SCHEDULE C**

STATEWIDE ABSTRACT GROUP, INC.                                     H  I 363 536

Number  ▮▮▮▮▮▮▮▮▮

The land referred to in this Commitment is described as follows:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon
erected.

SITUATE on the Northwesterly side of Paschall Avenue at the distance of four hundred
twenty-two feet, nine inches Southwestwardly from the Southwestwardly side of
Seventieth Street.

CONTAINING in front or breadth on the said Paschall Avenue fifteen feet, four
inches and extending of that width in length or depth Northwestwardly between
lines parallel with the said Seventieth Street ninety-seven feet to a certain
three feet wide alley extending Southwestwardly into and communicating with a
certain two feet, six inches wide alley which extends from Saybrook Avenue to
Paschall Avenue and the said three feet wide alley extends Northeastwardly and
communicates with a certain other two feet, six inches wide alley which extends
from Saybrook Avenue to Paschall Avenue.

BEING NO. 7055 Paschall Avenue.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER ▮▮▮▮▮▮▮▮▮▮▮▮

TOGETHER with the free and common use, right, liberty and privilege of the above
mentioned alleys as and for passageways and watercourses at all times hereafter,
forever.

BEING the same premises which John A. Brown by Indenture bearing date the 20th
day of May A.D. 1997 and recorded at Philadelphia in the Office for the Recording
of Deeds, in and for the County of Philadelphia on the 31st day of July A.D. 1997
in Deed Book JTD 370 page 255 &c., granted and conveyed unto Michael Brennan, his
heirs and assigns, in fee.

SCHEDULE C
ALTA Commitment
Reorder Form No. 3363 (Rev. 5/89)

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- [ ] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] Other(s) [specify]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Michael Brennan_ _____ (Seal)
Michael Brennan                     -Borrower

_____ (Seal)
                       -Borrower

_Raffael A. Brennan_ _____ (Seal)
Raffael A. Brennan                  -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

Witness:                                Witness:
_____

COMMONWEALTH OF PENNSYLVANIA, _Philadelphia_          County ss:

On this, the    **11th**    day of    **June 1998**   , before me,
_Brian J. Schu_          the undersigned officer, personally appeared Michael Brennan AND
                              _of Raffael A. Brennan_          known to me (or satisfactorily
proven) to be the person    whose name    is                 subscribed to the within instrument and acknowledged
that    he    executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission expires:

_____

NOTARIAL SEAL
BRIAN J. SCHU, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 8, 2001

CERTIFICATE OF RESIDENCE    I, _Brian J. Schu_
do hereby certify that the correct address of the within named lender is    **666 Swedesford Road, Suite 102, Wayne, PA 19087**
Witness my hand this    **11th**    day of June **1998**

_____

Agent of Lender

Form 3039 9/90
ITEM 1960L8 (9611)                      (Page 6 of 6 pages)          GREATLAND ■
                                                          To Order Call: 1-800-530-6393 □ Fax 616-791-1131

52664618
Page: 1 of 4

AFFIDAVIT OF LOST ASSIGNMENT OF REAL ESTATE MORTGAGE

LOAN #:

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE/DEED OF TRUST:

DATED:                    6/11/98
ORIGINAL LOAN AMOUNT:     $40,800.00
TRUSTOR/BORROWER:         MICHAEL BRENNAN AND RAFFAEL A BRENNAN
ORIGINAL BENEFICIARY:     CENTRAL MONEY MORTGAGE CO (IMC) INC

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF PHILADELPHIA COUNTY,
STATE OF PENNSYLVANIA RECORDED: 7/16/98 IN BOOK/VOLUME/LIBER: JTD1363
PAGE: 531 DOCUMENT:

PROPERTY SUBJECT TO LIEN: 7055 PASCHALL AVE, PHILADELPHIA, PA 19142

BASED UPON A DILIGENT SEARCH OF THE PROPERTY RECORDS, THE ASSIGNMENT OF
REAL ESTATE MORTGAGE

FROM: CENTRAL MONEY MORTGAGE CO (IMC) INC

TO:   DEUTSCHE BANK NATIONAL TRUST COMPANY F/K/A BANKERS TRUST
      COMPANY OF CALIFORNIA, NA, AS TRUSTEE OF CERTIFICATE HOLDERS OF
      BEAR STEARNS ASSET BACKED SECURITIES, INC, ASSET BACKED
      SECURITIES, SERIES 2010-1

HAS NEVER BEEN RECORDED.

BASED UPON A SEARCH OF ALL THE ORIGINAL DOCUMENTS RELATED TO THIS
MORTGAGE/DEED OF TRUST THE ORIGINAL OF THE ATTACHED ASSIGNMENT OF
MORTGAGE/DEED OF TRUST CAN NOT BE LOCATED.

THEREFORE, PLEASE RECORD THE COPY OF THE ASSIGNMENT OF MORTGAGE/DEED
OF TRUST WHICH WILL ENABLE THE CHAIN TO THE CURRENT HOLDER OF THE
MORTGAGE/DEED OF TRUST TO BE COMPLETED.

CURRENT OWNER OF THE MORTGAGE/DEED OF TRUST

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE (NOT IN ITS INDIVIDUAL
CAPACITY BUT SOLELY AS TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VCM
SERIES 2009-2

BY: ACQURA LOAN SERVICES, ITS ATTORNEY-IN-FACT


BY: _Dacia Owen_
NAME: DACIA OWEN
TITLE: Vice President

STATE OF Texas          ) SS.
COUNTY OF Dallas

ON June 7th, 2013, 2013, BEFORE ME Amie L. Wyman, NOTARY
PUBLIC, PERSONALLY APPEARED Dacia Owen, Vice President
PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY
EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED TO THE
WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE
SAME IN HIS/HER/THEIR AUTHORIZED CAPACITY(IES), AND THAT BY HIS/HER/THEIR
SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF
OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT.

WITNESS MY HAND AND OFFICIAL SEAL.

_Amie L Wyman_
SIGNATURE

AMIE L. WYMAN
MY COMMISSION EXPIRES
January 9, 2017

This Document Recorded        Doc Id 52664618
07/09/2013                    Receipt # 1264067
39 035*                       Rec Fee  198.00
Doc Code 9    Commissioner of Records City of Philadelphia

DO NOT GO BELOW THIS LINE

JAN 2 5 2019

## Loan Modification Agreement

**Modification Effective Date:** 5/1/2019
**Borrower(s):** MICHAEL BRENNAN

**Loan Number:** ▮▮▮▮
**Servicer:** Bayview Loan Servicing, LLC
**Original Promissory Note ("Note"):** 6/11/1998
**Original Principal Balance:** $40,800.00

**Deed of Trust/Mortgage ("Security Instrument"):** Deed of Trust or Mortgage securing the Note and creating a lien on certain real property ("Property") owned by Borrower.

**Borrower and Servicer agree to the following:**

1. **New Principal Balance:** $60,000.00, including the existing unpaid principal balance of $73,554.74 plus the capitalized unpaid installments, interest, late charges, fees and costs, and if applicable, advances for unpaid property taxes and/or insurance premiums decreased by $13,554.74. Based on the consideration listed above, and other good and valuable consideration, Servicer agrees to forgive $20,594.92. You will never be required to pay this amount. There may be prior deferment or forgiveness related to this loan or this current Agreement. There could be tax consequences related to this deferment or forgiveness, you are advised to seek guidance from an independent tax professional. If your loan was a daily simple interest loan, once converted the loan will be modified into a standard amortizing loan.

2. **New Monthly Payment;** $352.26, including monthly principal and interest payment of $181.70, plus monthly escrow payment of $170.56.

3. **New Interest Rate:** 2.000%

4. **New Maturity Date:** 4/1/2059

5. **New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal & Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 4/1/2019 | $181.70 | $170.56 | $352.26 | 5/1/2019 | 60 |
| 6 | 3.000% | 4/1/2024 | $211.09 | Adjusted Annually | Adjusted Annually | 5/1/2024 | 12 |
| 7-40 | 3.514% | 4/1/2025 | $226.76 | Adjusted Annually | Adjusted Annually | 5/1/2025 | 408 |

Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**Notice:** This agreement may contain preliminary figures that may change depending on a final review once the trial period has been completed.  Should adjustments be necessary, a notice will be sent to you with the details of the updates.

**No Other Changes:** Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below, Borrower has voluntarily signed this Agreement.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Modification Agreement,

**Borrower:**

By: _____    Date: 12/30/2018

MICHAEL BRENNAN

Jennifer Mignott
Assistant Vice President

**Servicer:**

By: _____    Date: 4/5/2019

Vice President, Bayview Loan Servicing, LLC

(Space Above This Line For Recorder's Use)

# CORPORATION ASSIGNMENT OF REAL ESTATE MORTGAGE

LN█ ██████

**FOR VALUE RECEIVED,** the undersigned hereby grants, assigns and transfer to Deutsche Bank National Trust Company f/k/a Bankers Trust Company of California, N.A. as Trustee of Certificate Holders of Bear Stearns Asset Backed Securities, Inc, Asset Backed Securities, Series 2000-1. all the rights, title and interest of undersigned in and to that certain Real Estate Mortgage Dated June 11, 1998, executed by Michael Brennan & Raffael A. Brennan

to Central Money Mortgage Co. (IMC), Inc.  a corporation organized under the laws of the state of Maryland and whose principal place of business is  8840 Stanford Blvd. Suite 2200, Columbia, Maryland  21045

and recorded in Liber: JTD  1363    page(s)    531        County Records. State of  PA

See Schedule A attached hereto and made a part hereof.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Real Estate Mortgage.

STATE OF Maryland
COUNTY OF Montgomery

By: Brian D. Holman

On _____ before
me, the undersigned, a Notary Public in and for said County
and State, personally appeared
 Brian D. Holman
known to me to be the
 President
and

known to me to be

Its: President

By: _____

Its: _____

Witness: Richard L. Toomey

of the corporation herein which executed the within
instrument, that the seal affixed to said instrument is the
corporate seal of said corporation; that said instrument was
signed and sealed on behalf of said corporation pursuant to
its by-laws or a resolution of its Board of Directors and that
he/she acknowledges said instrument to be the free act and
deed of said corporation.

Notary Public   Victoria B. Lightner,

                        Montgomery   County.
My Commission expires  January 10, 1999

(THIS AREA FOR OFFICIAL NOTARIAL SEAL)

PREPARED BY:                                  AND WHEN RECORDED MAIL TO

Central Money Mortgage Co., Inc.
8840 Stanford Blvd, Suite 2200               NAME
Columbia, MD  21045                          ADDRESS
                                             CITY &
                                             STATE

# EXHIBIT A
## LEGAL DESCRIPTION

The land referred to in this Commitment is described as:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northwesterly side of Paschall Avenue at the distance of four hundred twenty-two feet, nine inches Southwestwardly from the Southwestwardly side of Seventieth Street.

CONTAINING in front or breadth on the said Paschall Avenue fifteen feet, four inches and extending of that width in length or depth Northwestwardly between lines parallel with the said Seventieth Street ninety-seven feet to a certain three feet wide alley extending Southwestwardly into and communicating with a certain two feet, six inches wide alley which extends from Saybrook Avenue to Paschall Avenue and the said three feet wide alley extends Northeastwardly and communicates with a certain other two feet, six inches wide alley which extends from Saybrook Avenue to Paschall Avenue.

BEING NO. 7055 Paschall Avenue.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER ███████

TOGETHER with the free and common use, right, liberty and privilege of the above mentioned alleys as and for passageways and watercourses at all times hereafter, forever.

BEING the same premises which John A. Brown by Indenture bearing date the 20th day of May A.D. 1997 and recorded at Philadelphia in the Office for the Recording of Deeds, in and for the County of Philadelphia on the 31st day of July A.D. 1997 in Deed Book JTD 370 page 255 &c., granted and conveyed unto Michael Brennan, his heirs and assigns, in fee.

Prepared By: *Jan Woods*
**Jan Woods**
KC Wilson & Associates
23232 Peralta Drive, Ste. 119
Laguna Hills, CA 92653
(949) 470-3960

**When Recorded Return To:**
KC Wilson & Associates
23232 Peralta Drive, Ste. 119
Laguna Hills, CA 92653
**VANTIUM**



**52140740**
**Page: 1 of 4**
11/06/2009 01:21PM

This Document Recorded
11/06/2009
01:21PM
Doc Code  A      Commissioner of Records

Doc Id 52140740
Receipt #: 850373
Rec Fee: 154.50
City of Philadelphia

# ASSIGNMENT OF MORTGAGE

## DEUTSCHE BANK NATIONAL TRUST COMPANY FKA BANKERS TRUST COMPANY OF CALIFORNAI, N.A. AS TRUSTEE OF CERTIFICATE HOLDERS OF BEAR STEARNS ASSET-BACKED SECURITIES, INC., ASSET-BACKED SECURITIES, 2000-1

C/O EMC MORTGAGE, 2780 Lake Vista Drive, Lewisville, TX 75067
(ASSIGNOR)

To

## DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VCM SERIES 2009-2

1761 EAST ST ANDREW PLACE, SANTA ANA CA 92705-4934
(ASSIGNEE)

ASSIGNEE CERTIFIES THAT IT'S PRECISE ADDRESS IS:
1761 EAST ST ANDREW PLACE
SANTA ANA, CA 92705-4934

BY: *Jan Woods*
JAN WOODS, IT'S AGENT

COUNTY OF PHILDELPHIA
STATE OF: PENNSYLVANIA

WHEN RECORDED RETURN TO:
KC WILSON & ASSOCIATES
23232 PERALTA DR. STE. 119
LAGUNA HILLS, CA 92653

Tracking#1: ▮▮▮▮▮▮▮
Tracking#3:                    Tracking#2: ▮▮▮▮▮▮▮         State: PA
                               Tracking#4: ▮▮▮▮▮▮▮         MersID:

### ASSIGNMENT OF MORTGAGE

Know that **DEUTSCHE BANK NATIONAL TRUST COMPANY FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A., AS TRUSTEE OF CERTIFICATE HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES, INC., ASSET BACKED SECURITIES, SERIES 2000-1, BY ITS ATTORNEY-IN-FACT, EMC MORTGAGE CORPORATION,** a corporation with a business address of c/c EMC Mortgage Corporation, 2780 Lake Vista Drive, Lewisville, TX 75067, **"Assignor"**, for value received and other good and valuable consideration paid by

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VCM SERIES 2009-2**

*LOCATED AT :*
**1761 EAST ST. ANDREW PLACE
SANTA ANA, CA 92705-4934**

**"Assignee"**, the receipt and sufficiency of which is hereby acknowledged, the Assignor does hereby grant, bargain, sell, assign, transfer and convey unto the Assignee the following described **MORTGAGE**, duly recorded in the office of real property records in the **County of PHILADELPHIA, State of PENNSYLVANIA**, together with the indebtedness or obligation described in said instrument, and the monies due and to grow due thereon with the interest, as follows:

MORTGAGOR/TRUSTOR:  *MICHAEL BRENNAN & RAFFAEL A BRENNAN*
MORTGAGEE/BENEFICIARY:  *CENTRAL MONEY MORTGAGE CO (IMC) INC.*

DATE OF MORTGAGE/DEED OF TRUST: *6-11-1998*
RECORDED:                                          AMOUNT: ~~$45,735.08~~
DATE                VOLUME/BOOK          PAGE/FOLIO              *$40,800.00*
7/16/1998           JTD1363              531

PROPERTY ADDRESS:     **7055 PASCHALL AVE, PHILADELPHIA, PA 19142**

LEGAL DESCRIPTION:
**SEE ATTACHED LEGAL DESCRIPTION**
The undersigned hereby certifies that the precise Address of Assignee is:

_____
_____          By: _____

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

This Assignment is made without recourse to Assignor and without representation or warranty by Assignor, express or implied.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand this 2nd day of August, 2007, but effective this 31st day of July, 2007.

In Presence of:

Witness 1: A. Haryani

Witness 2: T. Brown

DEUTSCHE BANK NATIONAL TRUST COMPANY FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A., AS TRUSTEE OF CERTIFICATE HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES, INC., ASSET BACKED SECURITIES, SERIES 2000-1, By Its Attorney-in-Fact, EMC Mortgage Corporation

By: _Donna M. Graves_
    Donna M. Graves
Its  Vice President

Power of Attorney recorded on 10/14/2004 in PHILADELPHIA County, PA in Book _____ at Page _____ as Instrument # ██████

State of        NEW JERSEY          )
County of       SOMERSET            )

The undersigned, a notary public in and for above-said County and State, does hereby acknowledge that **Donna M. Graves, Vice President of EMC Mortgage Corporation who is named Attorney-in-Fact for DEUTSCHE BANK NATIONAL TRUST COMPANY FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A., AS TRUSTEE OF CERTIFICATE HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES, INC., ASSET BACKED SECURITIES, SERIES 2000-1, BY ITS ATTORNEY-IN-FACT, EMC MORTGAGE CORPORATION (According to a Power of Attorney)**, personally appeared before me this day, and being by me duly sworn, says that s/he is the authorized **Attorney-in-Fact for DEUTSCHE BANK NATIONAL TRUST COMPANY FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A., AS TRUSTEE OF CERTIFICATE HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES, INC., ASSET BACKED SECURITIES, SERIES 2000-1, BY ITS ATTORNEY-IN-FACT, EMC MORTGAGE CORPORATION (According to a Power of Attorney)**, being informed of the contents, voluntarily executed the foregoing and annexed instrument for and on behalf of such entity.

WITNESS my hand and official seal, this 2nd day of August, 2007.

My Commission Expires: 08/24/08

DONNA L. BRAY
Notary Public, State of New Jersey
No ██████
Qualified in Somerset County
Commission Expires
August 24, 2008

_____
Notary Public: Donna L. Bray

This document was prepared by Janice Rodgers, Hanover Capital Partners Ltd.
Post Office BOX 3980, Edison, NJ 08818-3980 - Phone: (732) 393-3033    Fax: (732) 572-5959

Tracking #1 ██████        Tracking #2 ██████                    PA

# EXHIBIT A
## LEGAL DESCRIPTION

The land referred to in this Commitment is described as follows:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northwesterly side of Paschall Avenue at the distance of four hundred twenty-two feet, nine inches Southwestwardly from the Southwestwardly side of Seventieth Street.

CONTAINING in front or breadth on the said Paschall Avenue fifteen feet, four inches and extending of that width in length or depth Northwestwardly between lines parallel with the said Seventieth Street ninety-seven feet to a certain three feet wide alley extending Southwestwardly into and communicating with a certain two feet, six inches wide alley which extends from Saybrook Avenue to Paschall Avenue and the said three feet wide alley extends Northeastwardly and communicates with a certain other two feet, six inches wide alley which extends from Saybrook Avenue to Paschall Avenue.

BEING NO. 7055 Paschall Avenue.

BEING PHILADELPHIA COUNTY TAX PARCEL NUMBER ███████████

TOGETHER with the free and common use, right, liberty and privilege of the above mentioned alleys as and for passageways and watercourses at all times hereafter, forever.

BEING the same premises which John A. Brown by Indenture bearing date the 20th day of May A.D. 1997 and recorded at Philadelphia in the Office for the Recording of Deeds, in and for the County of Philadelphia on the 31st day of July A.D. 1997 in Deed Book JTD 370 page 255 &c., granted and conveyed unto Michael Brennan, his heirs and assigns, in fee.

**EXECUTION VERSION**

Prepared by: Shellpoint Mortgage Servicing
When recorded return to:
Shellpoint Mortgage Servicing
75 Beattie Place, Suite 300
Greenville, SC 29601
Attention: General Counsel

**2020098023**
6 Pgs

P/ATTY    Book: DE 2609 Page: 1957 - 1962
November 20, 2020  12:11:30 PM
Rec: $25.00
**E-FILED IN GREENVILLE COUNTY, SC**

*Timothy J. Mooney*

## LIMITED POWER OF ATTORNEY

This Limited Power of Attorney is made in connection with that certain Servicing Agreement, dated as of October 27, 2020, by and among NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, as servicer (together with its permitted successors and assigns, the "Servicer"), IRP ADVANCING COMPANY II, LLC, as P&I advancing party, WILMINGTON SAVINGS FUND SOCIETY, FSB, not in its individual capacity but solely as trustee for the Verus Securitization Trust 2020-5, as owner (together with its permitted successors and assigns, the "Owner") and VERUS RESIDENTIAL LOANCO, LLC, as servicing administrator (together with its permitted successors and assigns, the "Servicing Administrator") (the "Agreement").

Wilmington Savings Fund Society, FSB, having an office at 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801, not in its individual capacity but solely as trustee for the Verus Securitization Trust 2020-5, as Owner, hereby makes, constitutes and appoints Servicer, by and through the Servicer's officers, Owner's true and lawful attorney-in-fact, in Owner's name, place and stead and for Owner's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreement (the "Mortgage Loans") for the purpose of performing, with regard to the Mortgage Loans, such acts and executing such documents in the name of Owner necessary and appropriate to effectuate the following enumerated transactions held by Owner on its own behalf and on behalf of any of its designee or affiliates who may be appointed from time to time under the Agreement.

This appointment shall apply to the following enumerated transactions:

1.  To execute, acknowledge, seal and deliver Mortgage Note endorsements, lost note affidavits, assignments of Mortgages and Deeds of Trust and other security instruments, satisfactions, releases and reconveyances of Mortgages and Deeds of Trust, subordinations, modifications, tax authority notifications and declarations, bills of sale, and other instruments of sale, conveyance and transfer, appropriately completed, with all ordinary and necessary endorsements, acknowledgments, affidavits, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing.

2.  To execute and deliver insurance filings and claims, affidavits of debt, substitutions of trustee, substitutions of counsel, non-military affidavits, notices of rescission, foreclosure deeds, transfer tax affidavits, affidavits of merit, verifications of complaints, notices to quit, bankruptcy declarations for the purpose of filing motions to lift stays, and other documents or notice filings on

behalf of Owner in connection with insurance, foreclosure, bankruptcy and eviction actions.

3.  To endorse any checks or other instruments received by the Servicer and made payable to Owner.

4.  To pursue any deficiency, debt or other obligation, secured or unsecured, including but not limited to those arising from foreclosure or other sale, promissory note or check.

5.  To pursue the conveyance of properties to the mortgage insurer, or the closing of title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

6.  The completion of loan assumption agreements and recordation of same.

7.  To execute and deliver all instruments of satisfaction or cancellation, or of partial or full release, discharge and all other comparable instruments, with respect to the Mortgage Loans.

8.  With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

    a.  The substitution of trustee(s) servicing under a Deed of Trust, in accordance with state law and the Deed of Trust;

    b.  The preparation and issuance of statements of breach or non-performance;

    c.  The preparation and filing of notices of default and/or notices of sale;

    d.  The cancellation/rescission of notices of default and/or notices of sale;

    e.  The taking of deed-in-lieu of foreclosure; and

    f.  The preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete the transactions in paragraph 8.a. through 8.e. above.

9.  With respect to other security instruments the power to perform any other necessary acts of foreclosure and/or eviction.

10.    With respect to the sale of real property acquired through a foreclosure or deed-in-lieu of foreclosure, including without limitation the execution of the following documentation:

    a.  Listing agreements;

    b.  Purchase and sale agreements;

    c.  Grant, warranty or quit claim deeds or any other deed causing the transfer of title to the property to a party contracted to purchase same;

    d.  Escrow instructions; and

    e.  Any and all documents necessary to effect the transfer of real property.

11.    The modification or amendment of escrow agreements established for repairs to the mortgaged property.

12.    The endorsement of loss drafts or other checks that are necessary to effectuate proper servicing of the Mortgage Loan.

13.    To do any other act or complete any other document deemed necessary or appropriate to service and administer the Mortgage Loans in accordance with, and subject to the terms and requirements of, the Agreement.

Nothing herein shall give any attorney-in-fact the rights or powers to negotiate or settle any suit, counterclaim or action against Owner.

The undersigned gives the Servicer full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all the Limited Power of Attorney shall be effective as of the date written below.

Owner will not be responsible for inspection of any items being executed pursuant to this Limited Power of Attorney and as such, is relying upon the Servicer to undertake whatever procedures may be necessary to confirm the accuracy of such items.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

Any third party may rely upon a copy of this Limited Power of Attorney, to the same extent as if it were an original, and shall be entitled to rely on a writing signed by the Servicer to establish conclusively the identity of a particular right, power, capacity, asset, liability, obligation, property, loan or commitment of Servicer for all purposes of this Limited Power of Attorney.

Servicer shall not be obligated to furnish bond or other security in connection with its actions hereunder.  Owner is indemnified for Servicer's actions in connection with the exercise of the powers granted hereunder in accordance with the indemnification provided in the Agreement.

Owner authorizes Servicer, by and through any of its directors or officers, or any other employee who is duly authorized by Servicer to certify, deliver and/or record copies and originals of this Limited Power of Attorney.

If any provision of this Limited Power of Attorney shall be held invalid, illegal or unenforceable, the validity, legality or enforceability of the other provisions hereof shall not be affected thereby.  This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York without regard to conflicts of law principles of such state.

This Limited Power of Attorney shall be effective as of the date set forth above and shall remain in full force and effect thereafter until a written notice of revocation hereof shall have been executed by Owner.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for the Verus Securitization Trust 2020-5, as Owner, has caused this Limited Power of Attorney to be executed by a duly elected and authorized signatory this 21st day of October 2020.

**OWNER:**

**WILMINGTON SAVINGS FUND SOCIETY, FSB, not in its individual capacity but solely as trustee for Verus Securitization Trust 2020-5**

By: _____

Name:  Mary Emily Pagano
Title: Assistant Vice President

Witness: _____
Printed Name: Dana Hinton

Witness: _____
Printed Name: Cedric Strother

Signature Page to Limited Power of Attorney — Shellpoint (VERUS 2020-5)

STATE OF Delaware

COUNTY OF New Castle

On October 21st, 2020, before me, the undersigned, a Notary Public in and for said State,
personally appeared Mary Emily Pagano, AVP of Wilmington Savings Fund Society, FSB, not
in its individual capacity but solely as trustee for the Verus Securitization Trust 2020-5,
personally known to me to be the person whose name is subscribed to the within instrument and
acknowledge to me that he/she executed that same in his/her authorized capacity, and that by
his/her signature on the instrument the entity upon behalf of which the person acted and
executed the instrument.

WITNESS my hand and official seal.

_____                                    [NOTARIAL SEAL]
Notary Public
My Commission Expires: August 13, 2023

Notary Page to Limited Power of Attorney – Shellpoint (VERUS 2020-5)